UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SEFIKA KLINCEVIC, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security, )<br>Defendant. ) | No. 4:08-CV-1558 (CEJ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

### I.   **Procedural History**

On August 28, 2002, plaintiff Sefika Klincevic filed an application for supplemental security insurance (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ *et seq*. On February 25, 2004, plaintiff's application was approved. (Tr. 9).

On October 20, 2005, the Social Security Administration (SSA) notified plaintiff that she had been overpaid in SSI benefits. (Tr. 64-67). The document included a detailed explanation of the overpayment. (Tr. 68). On October 26, 2005, plaintiff submitted a request for waiver of overpayment. (Tr. 58-63). After plaintiff's request was denied (Tr. 53-54), she submitted a request for reconsideration. (Tr. 35).

A hearing before an Administrative Law Judge (ALJ) was held on May 10, 2006. (Tr. 82). Plaintiff attended the hearing and was represented by counsel. (Tr. 84). The ALJ issued a decision on June 29, 2006. (Tr. 6-12). The Appeals Council denied plaintiff's request for review on August 12, 2008. (Tr. 2-4). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 U.S.C. § 405(g).

II.     Evidence Before the ALJ

During the hearing, plaintiff testified before the ALJ with the aid of a Bosnian interpreter, Sanjin Zdrnja. (Tr. 84).

Plaintiff testified that she lived on Kingston Street, which is located in St. Louis; however, plaintiff did not recall her address. (Tr. 87). Plaintiff also could not remember when she started receiving SSI benefits. (Tr. 88).

Plaintiff testified that she, along with her daughter, visited "the Chippewa Office of Social Security in St. Louis, concerning [her] SSI [benefits] and [her] husband, Nurija Klincevic, and what he was making[.]" (Tr. 88). Plaintiff testified that, once she started receiving regular pension payments, the SSA told her to submit her husband's paychecks. (Tr. 89). Plaintiff regularly submitted the paychecks until the SSA issued her a letter, indicating that she had received an overpayment. (Tr. 97-98). During a subsequent visit, plaintiff testified that a SSA employee told her to sign a form, confirming that she had received an overpayment. (Tr. 89). Plaintiff testified that she signed the form, but that she could not repay the overpayment. (Tr. 90)

Plaintiff's daughter, Emina Klincevic, then provided testimony. Ms. Klincevic testified that she had "been helping [plaintiff] with her Social Security problems[.]" (Tr. 101). Ms. Klincevic testified that, when she accompanied plaintiff to the SSA office in April 2004, "a lady . . . said there[was] no need for [plaintiff] to bring the checks every month" unless plaintiff's husband's income increased or another household member obtained a job. (Tr. 10, 101-2). Ms. Klincevic also testified that the SSA employee informed plaintiff that, if her household income increased, plaintiff "must report that." (Tr. 102). Ms. Klincevic testified that plaintiff's husband was laid off during June and July of 2005. (Tr. 10, 106).

Ms. Klincevic testified that she went with plaintiff to the SSA office on three, separate occasions. (Tr. 107). Their first visit was to submit the paychecks. Id. The second visit was prompted by a letter from the SSA, stating that the SSA would deduct $60 from plaintiff's SSI benefits. (Tr. 107-8). The purpose of the third visit was to discuss a letter that the SSA issued plaintiff, indicating that she had received an overpayment in SSI benefits. (Tr. 109, 112). During the third visit, Ms. Klincevic testified that she told the SSA employee that plaintiff could not repay the overpayment. (Tr. 109).

Ms. Klincevic testified that plaintiff did not always communicate with the SSA through an interpreter. (Tr. 121). Ms. Klincevic stated that plaintiff's husband's English was "really bad" and that plaintiff's English was "worse yet." Id. Ms. Klincevic testified that, from November 2004 through September 2005, it was difficult for plaintiff and her husband to make the house and car payments because plaintiff's husband was the household's sole source of income. (Tr. 122).

At the conclusion of the hearing, plaintiff testified that, during the alleged period of overpayment, her family struggled to meet their basic needs. (Tr. 124). Plaintiff also testified that her seventeen-year-old son lived in the household. (Tr. 91).

### III. Documentary Evidence

An undated "Income Continuation Sheet" indicates that plaintiff's husband earned the following wages:

| Verified Amount | Dates |
|---|---|
| $937.76 | 2/04 - 3/04 |
| $1,529.12 | 4/04 - 6/04 |
| $1,487.63 | 7/04 - 9/04 |
| $1,986.46 | 10/04 - 12/04 |
| $1,623.81 | 1/05 - 3/05 |
| $1,345.52 | 4/05 - 6/05 |
| $714.00 | 7/05 |

(Tr. 81). Plaintiff's husband's September 2005 income was approximately $1,500. (Tr. 81).

The Missouri Division of Employment Security issued plaintiff's husband unemployment checks in the amount of $213.00 on June 14, 2005, June 21, 2005, and June 28, 2005. (Tr. 52).

On September 19, 2005, the SSA issued plaintiff a Notice of Planned Action, stating: "We are writing to tell you about changes in your Supplemental Security Income payments." (Tr. 74). This notice informed plaintiff that, "[b]ecause of [her] income, [she was] not eligible to receive Supplemental Security Income payments from June 2005 on." (Tr. 75). In a report dated September 22, 2005, plaintiff made the following statement to the SSA:

> My husband, Nirija Klincevic, had been laid off from May 1, 2005 until August 2005. He drew unemployment for a short period of time. He is now back to work for Semco Plastics and he is no longer receiving unemployment benefits. I will provide the Social Security Administration with all of his paystubs [sic] since June 2005 and to the present.

(Tr. 22).

On October 10, 2005, the SSA issued plaintiff a Notice of Change in Payment, indicating that the SSA would send her a check for $465.00 for October 2005. The notice also stated that, beginning November 1, 2005, plaintiff would receive a "regular monthly check of $306.50[.]" (Tr. 70). On October 20, 2005, the SSA issued plaintiff a Notice of Overpayment, stating: "We are writing to let you know that we have paid you $3,582.29 too much Supplemental Security Income (SSI) money. The overpayment happened 11/2004 - 09/2005." (Tr. 64). The document indicated that "[t]he overpayment happened because of [plaintiff's] spouse's income was higher than anticipated." (Tr. 64). On October 26, 2005, plaintiff filed a Request for Waiver of

Overpayment Recovery or Change in Repayment Rate form, alleging that she was not at fault in connection with the overpayment, and that she could not afford to repay the money. (Tr. 9, 58). On this form, plaintiff reported: (1) monthly household income of $2,305; and (2) monthly household expenses of $1,754. (Tr. 62-63).

In a decision issued on November 29, 2005, the SSA denied plaintiff's request for waiver of overpayment, stating that plaintiff "did not report [her] husband's wages and unemployment [payments] in a timely manner." (Tr. 41). On January 26, 2006, plaintiff submitted a Request for Consideration form, indicating that she "was not over paid [sic]." (Tr. 35). On May 17, 2006, plaintiff filed another Request for Waiver of Overpayment Recovery or Change in Repayment Rate form. (Tr. 14-21).

### IV.   The ALJ's Decision

Administrative Law Judge H. Lloyd Kelley III presided at plaintiff's administrative hearing, and made the following findings:

1. On February 25, 2004, the claimant was determined to meet the medical requirements to receive Supplemental Security Income Payments.

2. The claimant was overpaid $3,582.29 for the period of November 2004 through September of 2005.

3. The undersigned finds that claimant's testimony is not totally credible for the reasons set forth in the body of the decision. The undersigned finds the testimony of the claimant's daughter to be credible for the reasons set forth in the body of the decision.

4. The claimant was not without fault for the overpayment for the period from October of 2004 through March of 2005. The claimant was without fault for not reporting her husband's income for April of 2005 through June 2005. Beginning in July of 2005, the clamant [sic] made $1,500 per month.

5. For the period of October of 2004 to March of 2005[,] the overpayment is not waived.

6. For the period from April of 2005 through September of 2005, it would not be against equity and good conscience, violate the intent

> of the Social Security Act, or deprive the claimant and her family of money needed for necessities to require repayment of the overpayment during this time.
>
> 7. Recovery of the overpayment would not deprive the claimant of income required for ordinary and necessary living expenses.

(Tr. 11-12).

## V. Discussion

An overpayment occurs when "an individual receives more . . . than the correct payment due under Title II of the Act." 20 C.F.R. § 404.501. The Social Security Act generally requires the Commissioner to recover an overpayment. 42 U.S.C. § 404(a)(1)(A). However, the statute explains that "there shall be no . . . recovery . . . from, any person who is without fault if such . . . recovery would defeat the purpose of this [Act] or would be against equity and good conscience." 42 U.S.C. § 404(b). The overpaid claimant has the burden of proving entitlement to a waiver of overpayment. Coulston v. Apfel, 224 F.3d 897, 900 (8th Cir. 2000) (per curiam) (citations omitted). Fault by the SSA does not relieve the overpaid claimant from proving that he or she is without fault. 20 C.F.R. § 404.507.

To determine whether a claimant is at fault, "the SSA will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." 20 C.F.R. § 404.507. The claimant is at fault when:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have expected to know was incorrect.

20 C.F.R. § 404.507.

To "[d]efeat the purposes of title II . . . means [to] defeat the purpose of the benefits under this title, i.e., to deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508. An overpaid claimant's ordinary and necessary living expenses include:

(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;

(2) Medical, hospitalization, and other similar expenses;

(3) Expenses for the support of others for whom the individual is legally responsible; and

(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

Id.

### A. Standard of Review

The Court must affirm the Commissioner's decision, if the decision "is supported by substantial evidence on the record as a whole." Gladden v. Callahan, 139 F.3d 1219, 1222 (8th Cir. 1998), quoting Smith v. Schweiker, 728 F.2d 1158, 1161 (8th Cir. 1984). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002), quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). To determine whether the Commissioner's decision is supported by substantial evidence, the Court "must take into account whatever in the record detracts from its weight." Gladden, 139 F.3d at 1222, quoting Smith v. Schweiker, 728 F.2d at 1162. The Court may not reverse merely because the evidence could support a contrary outcome. Estes, 275 F.3d at 724.

### B. Analysis

Plaintiff does not dispute the fact that she received an overpayment of SSI benefits. Rather, plaintiff's allegations of error attack the ALJ's determination that she was not without fault in causing the overpayment, and that recovery of the overpayment would not defeat the purpose of the Act.

1.   **Overpayment from November 2004 through March 2005[1]**

Plaintiff argues that she was without fault in causing the overpayment because she regularly submitted her husband's paychecks until an SSA employee mistakenly instructed her to do otherwise.[2] Plaintiff also contends that the ALJ failed to consider her linguistic limitations. As such, plaintiff asserts that "it is clear that the Social Security Administration is at fault and that [she] did not fully comprehend and understand the reporting requirements or the events or occurrences that should have been reported." (Tr. #7, at 7).

The ALJ found that plaintiff was not without fault with respect to the overpayment from November 2004 through March 2005. The ALJ considered plaintiff's linguistic limitations when he acknowledged that plaintiff's daughter "signed a paper at the [SSA] office that stated that she acted as [plaintiff]'s translator because [plaintiff] did not and does not understand or speak English[, and found that] this testimony [was] credible." (Tr. 10). However, the ALJ noted that "[plaintiff]'s husband had a significant pay increase over his April of 2004 pay for the period of October 2004 through March 2005 . . . and that increase was not reported by the claimant." (Tr. 10). The record reveals that, during their visit to the SSA office, Ms.

---

[1]The ALJ determined that plaintiff was not entitled to a waiver for the period from October 2004 through March 2005 (Tr. 12); however, this overpayment period began in November 2004. See (Doc. #68).

[2]The Court will not consider plaintiff's argument that her psychiatric disability contributed to her misunderstanding about the reporting requirements because the record contains no evidence to support this assertion. See (Doc. #7, at 7).

Klincevic explained to plaintiff that she no longer had to submit her husband's paychecks unless his income, or the total household income, increased. (Tr. 101-2). If plaintiff understood the SSA employee's instruction to stop submitting the paychecks, plaintiff also was aware that she had to resume submitting the paychecks once her husband's income increased. As such, the Court believes that the record supports the ALJ's finding that plaintiff was not without fault in causing the overpayment from November 2004 through March 2005. Therefore, the Court finds that plaintiff is not entitled to a waiver for this overpayment period.

### 2. Overpayment from April 2005 through September 2005

Plaintiff does not dispute the ALJ's determination that she was without fault for the overpayment from April 2005 through September 2005. Rather, plaintiff challenges the ALJ's finding that, for this period, recovery of the overpayment would not defeat the purpose of the Act. Plaintiff highlights Ms. Klincevic's testimony that, "during the period of overpayment, [plaintiff and her husband] had a difficult time getting by because they had mortgage payments, car payments, and medical payments to pay." (Doc. #7, at 8-9). However, the record indicates that plaintiff's monthly household income exceeded the monthly living expenses by $551. See (Doc. #62-63). In fact, the monthly expenses included both mortgage payments and car operation and maintenance expenses. (Doc. #63). Based on the foregoing, the Court finds that the record supports the ALJ's finding that, "[f]or the period from April of 2005 through September of 2005, it would not be against equity and good conscience, violate the Social Security Act, or deprive [plaintiff] and her family of money needed for necessities to require repayment of the overpayment during this [period]." (Tr. 12).

### VI. Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence on the record as a whole. Therefore, plaintiff is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in her brief in support of complaint [Doc. #7] is **denied**.

A separate judgment in accordance with this Memorandum and Order shall be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 8th day of March, 2010.